# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
August 7, 2023

Lyle W. Cayce
Clerk

———————

No. 22-10384

———————

United States of America,

*Plaintiff—Appellee*,

*versus*

Vinson Lee Willis, Jr.,

*Defendant—Appellant*.

———————————————————————

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:19-CR-488-1

———————————————————————

Before Dennis, Engelhardt, and Oldham, *Circuit Judges*.

Andrew S. Oldham, *Circuit Judge*:

Vinson Lee Willis, Jr., pled guilty to three counts of possessing a firearm as a felon in violation of 18 U.S.C. § 922(g)(1). He raises various issues on appeal. All fail, save for one: Willis's sentence is impermissibly ambiguous. We therefore vacate and remand for further proceedings consistent with this opinion.

I.

Vinson Lee Willis, Jr., is a convicted felon who dealt in guns and narcotics. In early August 2019, a confidential informant contacted agents at

the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") about an interaction the informant had with a man named "D.O." On August 3, D.O. sold the informant methamphetamine, called his supplier on the informant's phone, and drove the informant to his supplier's house to collect a load of heroin. D.O. later told the informant that "he had the ability to sell large quantities of heroin, ecstasy, and as many guns as [the informant] could purchase." ATF agents searched various law enforcement databases for the phone number and house address. They determined that Willis was the likely supplier.

Three periods of firearms sales and possession followed. First, from August 8–23, Willis sold eleven guns to two confidential informants and an undercover agent. D.O. served as the intermediary for the transactions. Then, from August 26–28, the undercover agent and one of the confidential informants purchased three more firearms directly from Willis. Finally, on September 4, the undercover agent and one of the confidential informants met Willis to purchase additional firearms. Willis placed one of the guns in the undercover agent's truck. While returning to his car to retrieve the others, he saw law enforcement vehicles heading toward him. Willis ran. The officers quickly apprehended and arrested him. After Willis waived his *Miranda* rights and consented to the search of his vehicle, the officers found two loaded guns—one in the trunk, the other in a seatback pocket.

Based on these three periods of possession, Willis was charged with, and pled guilty to, three corresponding counts of being a felon in possession of a firearm. *See* 18 U.S.C. § 922(g)(1); *see also id.* § 924(a)(2) (West 2021) (providing the sentence for a § 922(g) offense at the time of Willis's violation); *id.* § 924(a)(8) (West 2022) (providing the current sentence for a § 922(g) offense). The presentence report ("PSR") calculated Willis's offense level to be 30 and his criminal-history category to be V. This yielded

No. 22-10384

a Guidelines range of 151–188 months' imprisonment and 3 years' supervised release. Willis filed no objections to the PSR.

On April 14, 2022, the district court imposed the following sentence:

> [I]t is the judgment of the Court that the defendant, Vinson Lee Willis, Jr., is hereby committed to the custody of the Federal Bureau of Prisons for a period of 120 months on Counts 1, 2, and 3. I'm going to run those consecutively on you. You'll finish one, and then you'll finish the next, and then you'll finish the next. Only to the extent it produces a total aggregate of 188 months.

The district court also sentenced Willis to a 3-year term of supervised release. The April 19 written judgment tracked the oral pronouncement. Willis timely filed a notice of appeal on April 20, 2022.

But on May 31, the district court scheduled a "re-sentencing hearing" to "address matters . . . raised by the Bureau of Prisons." Specifically, the district court had received "a correspondence . . . from the Federal Bureau of Prisons that indicated the sentence could not be executed as intended." Because Willis had already noticed his appeal, Willis filed an unopposed motion in the Fifth Circuit requesting the appeal be stayed pending the purported re-sentencing. We granted the motion. But we also clarified that the order was "not to be construed as a comment on what authority the district court has, at this time, over the sentence."

At the July 28 re-sentencing hearing, the district court said it was "reimposing" the original April sentence—but "with a little tweak." "With the permission of the parties," the district court sentenced Willis to "180 months rather than 188 months." In its words:

> Vinson Lee Willis, Jr., is hereby committed to the custody of the Federal Bureau of Prisons for a period of 120 months on Counts 1 and 2, to run concurrently with each other. The

3

No. 22-10384

> defendant is further committed to the custody of the Federal Bureau of Prisons for a period of 60 months on Count 3, to run consecutively to the sentences imposed in Counts 1 and 2. The total aggregate sentence is 180 months. . . . It is further ordered that upon release from imprisonment, the defendant shall be placed on supervised release for a term of three years per count, to run concurrently with each other.

The district court did so, it said, "to make clear that [it was] sentencing Mr. Willis for his crimes and not his misconduct in court." The court explained that it thought Willis had been a "smart aleck" at the prior hearing. And while it continued to think 188 months was an appropriate sentence, the court decided to "knock eight months off" to "make clear for the appellate record" that it was sentencing Willis for "the crime and not [his] smart mouth." Willis filed another notice of appeal the day after the district court entered its amended judgment.

We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

## II.

Willis argues his sentence is procedurally and substantively flawed. Recall, however, that Willis was sentenced twice for the same conviction—once in April 2022, then again in July 2022. So before we can evaluate Willis's alleged errors, we must begin with the analytically prior question: Which sentence do we evaluate?

Willis argues that the district court lacked jurisdiction to conduct the July re-sentencing and to enter the amended judgment imposing a different term of imprisonment. The Government agrees. So do we.

Willis timely filed his initial notice of appeal on April 20. This was "an event of jurisdictional significance." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982) (per curiam). "It confer[red] jurisdiction on the court of appeals and divest[ed] the district court of its control over those aspects of

the case involved in the appeal." *Ibid.*; *see also Ross v. Marshall*, 426 F.3d 745, 751 (5th Cir. 2005) ("[T]he filing of a valid notice of appeal from a final order of the district court divests that court of jurisdiction to act on the matters involved in the appeal." (quotation omitted)); *United States v. Lucero*, 755 F. App'x 384, 386–87 (5th Cir. 2018) (per curiam) ("The general rule is that a case can exist only in one court at a time, and a notice of appeal permanently transfers the case to us until we send it back."); *Griggs*, 459 U.S. at 58–60 (explaining why it would not be "tolerable" to have "a district court and a court of appeals . . . simultaneously analyzing the same judgment"). Thus, on a straightforward application of the one-court-at-a-time rule, the district court lacked the power to re-sentence Willis on July 28. After all, the entirety of Willis's appeal involves the procedural and substantive reasonableness of his sentence, so the district court's re-sentencing necessarily clashed with "aspects of the case involved in the appeal." *Griggs*, 459 U.S. at 58.

"True, there are exceptions to the general one-court-at-a-time rule." *Lucero*, 755 F. App'x at 386; *see, e.g.*, Fed. R. App. P. 4(b)(3), (5); *see also* 16A Charles Alan Wright et al., Federal Practice and Procedure § 3949.1 (5th ed. Apr. 2023 update) [hereinafter Wright & Miller] (collecting exceptions). But none applies here.

First, Appellate Rule 4(b)(5) instructs that "[t]he filing of a notice of appeal . . . does not divest a district court of jurisdiction to correct a sentence under Federal Rule of Criminal Procedure 35(a)." Fed. R. App. P. 4(b)(5). Rule 35(a), in turn, provides that "[w]ithin 14 days after sentencing, the court may correct a sentence that resulted from arithmetical, technical, or other clear error." Fed. R. Crim. P. 35(a). Even if the July re-sentencing were best interpreted as correcting "arithmetical, technical, or other clear error," *ibid.*, the district court nevertheless lacked jurisdiction to do so. That's because more than 14 days had passed between the original April judgment and the July re-sentencing. And Rule 35(a)'s "time limit is jurisdictional and

strictly construed." *United States v. Coe*, 482 F. App'x 957, 957 (5th Cir. 2012) (per curiam); *see also United States v. Lopez*, 26 F.3d 512, 518–23 (5th Cir. 1994) (per curiam) (so holding with respect to an earlier, but substantially similar, iteration of Rule 35). Regardless, the district court's decision to "knock eight months off" Willis's sentence was not in response to an "arithmetical, technical, or other clear error." FED. R. CRIM. P. 35(a). Rather, the district court did so because, upon reflection, it wished it "had held [Willis] in contempt rather than giving [him] 188 months," and because it now "want[ed] to make clear for the appellate record" that Willis was being sentenced for "the crime and not [his] smart mouth." This is not a qualifying justification under Rule 35. The Rule's advisory committee notes even warn that Rule 35 "is not intended to afford the court the opportunity . . . to change its mind about the appropriateness of the sentence." FED. R. CRIM. P. 35 advisory committee's notes to 1991 amendment.

Second, Federal Rule of Criminal Procedure 36 permits the district court to "correct a clerical error in a judgment, order, or other part of the record." FED R. CRIM. P. 36. But the changes the district court made to Willis's sentence at the re-sentencing hearing—including reducing the prison term from 188 to 180 months—were far more substantial than a "clerical" correction. *See Lopez*, 26 F.3d at 515 n.5 ("Rule 36 does not encompass sentence modifications."); *United States v. Buendia-Rangel*, 553 F.3d 378, 379 (5th Cir. 2008) (per curiam) (explaining that "clerical errors" exist "when the court intended one thing but by . . . mistake or oversight did another" (quotation omitted)). Moreover, even if the prison-term reduction somehow qualified as a clerical-error correction, Willis's April 20 notice of appeal nevertheless divested the district court of jurisdiction to act under Rule 36. *Lucero*, 755 F. App'x at 387 ("[A]n effective notice of appeal divests the district court of jurisdiction, and a district court cannot use a Rule 36

motion to reacquire it."); *accord United States v. Walker*, 2022 WL 1652751, at *1 (5th Cir. May 24, 2022) (per curiam).

Third, 18 U.S.C. § 3582 allows a district court to modify a sentence in certain circumstances notwithstanding an otherwise final judgment. *See* 18 U.S.C. § 3582(b)(1), (c). But this exception is also inapplicable. The district court may modify a sentence via § 3582(c): (1) upon a motion of either the Director of the Bureau of Prisons or the defendant, if there are "extraordinary and compelling reasons" warranting a reduction or the defendant is 70 years old or older, "has served at least 30 years in prison," and is not a danger to another; (2) to the extent a modification is expressly permitted by statute or Rule 35 of the Federal Rules of Criminal Procedure; and (3) when a defendant has been sentenced to a prison term "based on a sentencing range that has subsequently been lowered by the Sentencing Commission." *Id.* § 3582(c). But neither the director of the Bureau of Prisons nor Willis filed a motion to modify. The entry of the amended judgment fell outside the 14-day window for a Rule 35(a) correction. And no part of this case involves a change to the relevant Guidelines.

Regardless, even if § 3582 did give the district court the *authority* to re-sentence Willis in this context, it did not give that court the *jurisdiction* to do so after Willis had already filed his notice of appeal. *See Lopez*, 26 F.3d at 515 n.3 (distinguishing a district court's general "authority" to act under § 3582(c) from its "jurisdiction" to do so at a specific time). That's because "[n]othing in the language of the [statute] suggests that its drafters intended to alter th[e] longstanding jurisdictional principle" that the "entry of a notice of appeal divests the district court of jurisdiction to adjudicate any matters related to the appeal." *United States v. Distasio*, 820 F.2d 20, 23 (1st Cir. 1987); *see also United States v. Maldonado-Rios*, 790 F.3d 62, 64 (1st Cir. 2015) (per curiam) (holding "that a district court lacks the power to order a sentence modification under 18 U.S.C. § 3582(c) while an appeal of that

sentence is pending"). Absent a clear statement to the contrary, we decline to infer one. *See Lopez*, 26 F.3d at 515 n.3 ("[Section] 3582(c) does not expressly address the jurisdiction of a court to modify an imposed term of imprisonment."); *Lucero*, 775 F. App'x at 386–87 (requiring a clear statement to override the one-court-at-a-time rule).

Fourth and finally, the district court sought and received "the permission of the parties" before re-sentencing Willis in July. But it is a bedrock pillar of federal law that "subject-matter jurisdiction cannot be created by waiver or consent." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 919 (5th Cir. 2001); *see also Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) ("[S]ubject-matter delineations must be policed by the courts on their own initiative even at the highest level."). That's doubly true here where the district court's assertion of jurisdiction where it doesn't exist (that court) undermines jurisdiction where it does (our court).

In sum, Willis's timely notice of appeal transferred the case from the district court to ours, which divested the district court of jurisdiction to re-sentence Willis. Because the district court lacked jurisdiction, the July re-sentencing is "null and void." 16A WRIGHT & MILLER § 3949.1 ("[O]nce jurisdiction passes to the court of appeals, the district court generally lacks power to act with respect to matters encompassed within the appeal, and actions taken by the district court in violation of this principle are null and void."); *accord United States v. Jones,* 482 F. App'x 956, 956–57 (5th Cir. 2012) ("[T]he district court had until 7 September 2011 to correct or modify Jones' original sentence; it lacked jurisdiction to re-sentence him on 3 November 2011. Accordingly, the later-imposed sentence and its corresponding entry of judgment are void."). We therefore confine our analysis of Willis's claims to the April sentencing.

III.

Willis claims his operative sentence is procedurally and substantively flawed in four ways. He argues that the district court (A) imposed a multiplicitous sentence and (B) applied the Guidelines incorrectly when calculating his criminal-history score. Willis further claims that his sentence is (C) substantively unreasonable and (D) impermissibly ambiguous. The first three challenges are unavailing. Willis prevails on the fourth.

A.

Start with multiplicity. "'Multiplicity' is spreading a single offense over several counts." 1A Wright & Miller § 143. This can happen in two ways. *United States v. Vasquez*, 899 F.3d 363, 381 (5th Cir. 2018) (recognizing "two species of multiplicity challenges" (quotation omitted)). "The first type arises when a defendant is charged with violating two different statutes, one of which is arguably the lesser included offense of the other." *United States v. Woerner*, 709 F.3d 527, 539 (5th Cir. 2013). "The second type of multiplicity challenge arises when charges for multiple violations of the same statute are predicated on arguably the same criminal conduct." *Ibid.*

This appeal allegedly involves the latter. Namely, Willis argues that by charging him with—and sentencing him for—three felon-in-possession counts, the district court punished him thrice for what he asserts was a single ongoing offense. If true, this would violate the Double Jeopardy Clause's prohibition "against multiple punishments for the same offense." *Whalen v. United States*, 445 U.S. 684, 688 (1980) (quotation omitted); *see* U.S. Const. amend. V ("[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb."); *United States v. Buchanan*, 485 F.3d 274, 278 (5th Cir. 2007) ("The rule against multiplicity is grounded in the Fifth Amendment's prohibition against double jeopardy.").

No. 22-10384

Willis raises his multiplicity challenge for the first time on appeal, so we review it under the four-factor plain-error standard. *United States v. Njoku*, 737 F.3d 55, 67 (5th Cir. 2013). To prevail, Willis must demonstrate that the district court (1) made an error (2) that was "clear or obvious" and (3) that "affected [his] substantial rights." *Puckett v. United States*, 556 U.S. 129, 135 (2009). If Willis satisfies those three prongs, then we (4) have "*discretion* to remedy the error—discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Ibid.* (quotation omitted).

Willis cannot meet the plain-error standard because the district court didn't err—plainly or otherwise. Willis was convicted under § 922(g)(1), which "has three requirements: (1) that the defendant previously had been convicted of a felony; (2) that he possessed a firearm; and (3) that the firearm traveled in or affected interstate commerce." *United States v. Daugherty*, 264 F.3d 513, 515 (5th Cir. 2001) (quotation omitted); *see also* 18 U.S.C. § 924(a)(8). As Willis rightly points out, "[t]he evil Congress sought to suppress by section 922 was the arming of felons," so "the section is based on the status of the offender and not the number of guns possessed." *United States v. Berry*, 977 F.2d 915, 919 (5th Cir. 1992). Accordingly, we have held that the "simultaneous possession of multiple firearms . . . [i]s a single [§ 922] offense regardless of the number of weapons involved." *United States v. Villegas*, 494 F.3d 513, 515 (5th Cir. 2007) (citing *United States v. Hodges*, 628 F.2d 350, 351 (5th Cir. 1980)).

That said, we've also made abundantly clear that the "possession of *different* firearms at *different* times" are "separate and distinct prohibited acts." *United States v. Planck*, 493 F.3d 501, 503–04 (5th Cir. 2007) (emphasis added) (quotation omitted). Thus, when different counts "involve[] different firearms received and possessed by [the defendant] at different times," those counts permissibly punish independent offenses and

10

No. 22-10384

thus do not violate the Double Jeopardy Clause. *United States v. Harper*, 802 F.2d 115, 118 n.4 (5th Cir. 1986); *accord Planck*, 493 F.3d at 504 ("[A] defendant could be charged with multiple violations of [§ 922] for receipt or possession of different firearms at different times."); *United States v. Jones*, 601 F.3d 1247, 1259 (11th Cir. 2010) ("[W]here a defendant has possessed different weapons at different times or places, the [G]overnment may treat them as separate units of prosecution and charge multiple counts.").

Here, Willis clearly pled guilty to possessing *distinct* firearms during three *distinct* timeframes. And he was convicted of and sentenced for each of those distinct units of possession. In particular, Willis possessed 11 firearms between August 8 and August 23, 2019 (Count 1); possessed 3 different firearms between August 26 and August 28, 2019 (Count 2); and possessed 3 different firearms on September 4, 2019 (Count 3). Willis's sentence therefore is not multiplicitous. *See Planck*, 493 F.3d at 503–04 (imposing multiple punishments for the "possession of different firearms at different times" permissibly punishes "separate and distinct prohibited acts" (quotation omitted)).

To all this—and contrary to the indictment, his guilty plea, and the PSR—Willis nevertheless asks us to infer that he "was in continuous constructive or actual possession of firearms throughout the entire period covered by the [i]ndictment." Why? Because he was a drug dealer (and drug dealers, he says, are armed "continuously"); and because one of the guns recovered on September 4 was found in the driver's seat-back pocket (which, he says, indicates it was his personal firearm, "not one of the guns he intended to sell"). This is a far cry from the "affirmative proof" that Willis would need to contravene his indictment and guilty plea, to demonstrate simultaneous possession, and to prove plain error. *United States v. Meza*, 701 F.3d 411, 433 (5th Cir. 2012); *see also United States v. Davila*, 1995 WL 295851, at *4 (5th Cir. 1995) ("[A] defendant who pleads guilty to criminal

11

charges may assert a claim of multiple punishments in violation of the Double Jeopardy Clause only if the violation is apparent on the face of the indictment or record." (quotation omitted)).

## B.

Willis also contends the district court calculated his criminal-history score incorrectly when determining his Guidelines range. Specifically, Willis argues that the district court plainly erred by counting his 2015 possession-of-a-controlled-substance conviction separately from his 2015 aggravated-assault-with-a-deadly-weapon convictions. He says that if his criminal-history score were calculated properly, the Guidelines sentence would have been 135–168 months in prison instead of 151–188 months. *Cf. Molina-Martinez v. United States*, 578 U.S. 189, 198–202 (2016).

The Sentencing Guidelines provide criminal-history points based on the defendant's "prior sentences." *See* U.S.S.G. §§ 4A1.1, 4A1.2; *see also id.* Ch. 5, Pt. A (table showing how the applicable criminal-history category combines with a defendant's offense level to define his Guidelines sentence). A "prior sentence" is "any sentence previously imposed upon adjudication of guilt." *Id.* § 4A1.2(a)(1). But when there are multiple prior sentences—as there are here—courts must determine whether the "sentences [should be] counted separately or treated as a single sentence." *Id.* § 4A1.2(a)(2). "Prior sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest (*i.e.*, the defendant is arrested for the first offense prior to committing the second offense)." *Ibid.* Yet even absent an intervening arrest, prior sentences are still counted separately "unless (A) the sentences resulted from offenses contained in the same charging instrument; or (B) the sentences were imposed on the same day." *Ibid.* If either (A) or (B) applies, the district court should treat those

prior sentences as a single sentence when assigning criminal-history points. *Ibid.*

Willis claims that his prior sentences for aggravated assault and possession of a controlled substance should have been treated as a "single sentence" under § 4A1.2(a)(2). That's so, he says, because the sentences *were not* "separated by an intervening arrest," and *were* "imposed on the same day." *Ibid.* Willis raises this argument for the first time on appeal, so we review for plain error. *See Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1904–05 (2018).

The district court did not commit "clear or obvious" error. *Puckett*, 556 U.S. at 135. Willis was arrested on September 23, 2015, for two aggravated-assault offenses and one controlled-substance offense. He was then sentenced on December 17, 2015, to four years of deferred-adjudication probation for each offense. So far so good for Willis. But on January 19, 2018, the Government filed a motion to revoke Willis's probation for the controlled-substance offense, and on March 6, 2018, the district court sentenced Willis to one year in state jail on that offense. Willis is therefore correct that the offenses were not "separated by an intervening arrest." U.S.S.G. § 4A1.2(a)(2). But the one-year state jail sentence for the controlled-substance offense arose from the Government's January 2018 motion, not the 2015 indictment. And the district court imposed the one-year sentence for the controlled-substance offense in 2018, not the same day in 2015 when it imposed the sentence for the aggravated assault charges. Thus the district court did not err, much less plainly err, in counting the sentences as separate.

Indeed, we've previously declined to find plain error in a nearly identical situation. In *United States v. Sustaita-Mata*, the defendant had two prior theft convictions, one of which included a later-imposed revocation

13

No. 22-10384

sentence. 728 F. App'x 402 (5th Cir. 2018) (per curiam). The district court counted them separately. *Id.* at 402. Sustaita-Mata argued for the first time on appeal that the two theft sentences should have been treated as a single sentence because the original sentences were imposed on the same day. *Id.* at 403. Instead, we held that Sustaita-Mata had failed to demonstrate "clear or obvious" error because he failed to cite any circuit precedent establishing that they should have been treated as a single sentence. *Id.* at 402–03 (citing *United States v. Carlile*, 884 F.3d 554, 558 (5th Cir. 2018)). Nor could he otherwise show that the dispute was "settled by a straightforward application of the Guidelines." *Id.* at 403 (citing *United States v. Blocker*, 612 F.3d 413, 416 (5th Cir. 2010), *abrogated on other grounds by United States v. Martinez-Rodriguez*, 821 F.3d 659, 664 (5th Cir. 2016)). Consequently, we concluded that "the district court could have reasonably interpreted the Guidelines at issue as it did" by treating the later-imposed revocation sentence as the relevant "sentence" for purposes of U.S.S.G. § 4A1.2(a)(2). *Ibid.* (quotation omitted). So too here.[1]

## C.

Next, Willis challenges the substantive reasonableness of his within-Guidelines sentence. This is the only challenge Willis preserved. *See Holguin-Hernandez v. United States*, 140 S. Ct. 762, 765–67 (2020). We review

---

[1] Willis contends for the first time in his reply brief that, as a factual matter, his deferred-adjudication sentence for the controlled-substance offense was not actually imposed on the revocation date. Willis claims the state court later granted a motion for a new trial, which he says "undid" his conviction for the controlled-substance offense. We decline to consider this "completely new issue in [Willis's] reply brief." *Cousin v. Trans Union Corp.*, 246 F.3d 359, 373 n.22 (5th Cir. 2001); *see also Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994) ("An appellant abandons all issues not raised and argued in [his] *initial* brief on appeal.").

14

preserved reasonableness challenges for abuse of discretion. *United States v. Sepulveda*, 64 F.4th 700, 709 (5th Cir. 2023).

Why abuse of discretion? We apply such a "highly deferential" standard of review "because the sentencing court is in a better position to find facts and judge their import under the [18 U.S.C.] § 3553(a) factors with respect to a particular defendant." *United States v. Hernandez*, 876 F.3d 161, 166 (5th Cir. 2017) (quotation omitted); *see also Gall v. United States*, 552 U.S. 38, 51 (2007) ("The judge sees and hears the evidence, makes credibility determinations, has full knowledge of the facts and gains insights not conveyed by the record." (quotation omitted)). Moreover, "within-Guidelines sentences enjoy a presumption of reasonableness," so our review of Willis's 188-month, within-Guidelines sentence is doubly deferential. *United States v. Scott*, 654 F.3d 552, 555 (5th Cir. 2011). He can rebut the presumption only by "demonstrat[ing] that the sentence does not account for a factor that should receive significant weight, gives significant weight to an irrelevant or improper factor, or represents a clear error of judgment in balancing sentencing factors." *Hernandez*, 876 F.3d at 166 (citing *United States v. Cooks*, 589 F.3d 173, 186 (5th Cir. 2009)).

Willis contends that the July re-sentencing transcript and amended judgment prove that the district court's April sentence was "the product of a clear error in judgment" and based upon "an improper or irrelevant factor." Specifically, Willis asserts that the district court's later attempt to re-sentence him to 180 months' imprisonment demonstrates that the district court never intended to impose the original 188-month sentence. He further claims that the district court admitted to considering an impermissible factor when it acknowledged at the re-sentencing that it had punished Willis for his "smart mouth" at the April 14 hearing and thus imposed a longer sentence than was necessary.

We disagree. Even if Willis could avail himself of the null-and-void July re-hearing to satisfy his burden with respect to the April sentence, we are not persuaded by his interpretation of the record. The district court explicitly reaffirmed at the July hearing that it had intended to impose "a total aggregate sentence of 188 months." And it did so because that was "the top of the advisory guideline range"—which it thought was necessary to reflect "the seriousness of the defendant's criminal history" and to "protect the public." *See* 18 U.S.C. § 3553(a)(1)–(2). And we are unpersuaded that the district court admitted to punishing him for his conduct at the April 14 hearing. At most, the district court's reasoning is ambiguous. True, the district court did say at one point that in hindsight it wished it had "held [Willis] in contempt rather than giving [him] 188 months." But in the same hearing, it also said, "I don't think that 188 months is inappropriate at all" and that it was now "knock[ing] eight months off" merely to preempt any "misunderstanding [whether Willis was] being sentenced for the crime and the crime only." *See also* ROA.347 ("I don't like how you treated me. I don't like how you talked. And—but that is not why you got this sentence, and I want to make that clear to you. You got this sentence because—to protect the community because of your violent criminal history."). Such an ambiguous record is not enough to overcome the "presumption of reasonableness" we apply to within-Guidelines sentences. *Scott*, 654 F.3d at 555.

But even if the district court *did* base Willis's sentence in part on his lack of remorse at the hearing, Willis doesn't cite any authority for the proposition that such conduct is an irrelevant or improper consideration. *Cf. United States v. Douglas*, 569 F.3d 523, 527–28 (5th Cir. 2009); *United States v. Navarro-Jusino*, 993 F.3d 360, 362 (5th Cir. 2021); *United States v. Kippers*, 685 F.3d 491, 499 (5th Cir. 2012); *United States v. Medina-Anicacio*, 325 F.3d 638, 648 (5th Cir. 2003). We therefore hold there was no abuse of discretion.

D.

Willis's fourth and final claim is that his sentence is impermissibly ambiguous. We review this unpreserved claim for plain error. *See United States v. Taylor*, 973 F.3d 414, 419 (5th Cir. 2020); *see also United States v. Barber*, 865 F.3d 837, 839 (5th Cir. 2017).

The Supreme Court has long held that "[s]entences in criminal cases should reveal with fair certainty the intent of the court and exclude any serious misapprehensions by those who must execute them." *United States v. Daugherty*, 269 U.S. 360, 363 (1926). A sentence violates this command when it is "ambiguous with respect to the time and manner in which it is to be served" or "is internally self-contradictory." *United States v. Setser*, 607 F.3d 128, 132 (5th Cir. 2010), *aff'd*, 566 U.S. 231 (2012) (quotation omitted); *see also Taylor*, 973 F.3d at 421; *United States v. Garza*, 448 F.3d 294, 302 (5th Cir. 2006); *United States v. Story*, 439 F.3d 226, 233 (5th Cir. 2006); *United States v. Juarez*, 812 F.3d 432, 437 (5th Cir. 2016).

Willis's sentence is impermissibly ambiguous. Recall that the district court imposed the following sentence:

> [I]t is the judgment of the Court that the defendant, Vinson Lee Willis, Jr., is hereby committed to the custody of the Federal Bureau of Prisons for a period of 120 months on Counts 1, 2, and 3. I'm going to run those consecutively on you. You'll finish one, and then you'll finish the next, and then you'll finish the next. Only to the extent it produces a total aggregate of 188 months.

This sentence is either "internally self-contradictory" or "ambiguous with respect to the time and manner in which it is to be served." *Setser*, 607 F.3d at 132 (quotation omitted). If we give full effect to the requirement that the three 120-month terms run consecutively, then we must ignore the 188-month cap. And if we give full effect to the 188-month cap, then the

requirement that the three 120-month terms run consecutively is either nonsensical (at worst) or incomplete and indeterminate (at best). As such, "[r]easonable minds could differ on the interpretation of the sentence imposed." *Taylor*, 973 F.3d at 421. The court therefore committed "clear or obvious" error, *Puckett*, 556 U.S. at 135, by imposing this "ambiguous and illegal" sentence, *United States v. Stark*, 811 F. App'x 893, 894 (5th Cir. 2020) (per curiam); *accord Setser*, 607 F.3d at 132 ("A sentence may be illegal if it is ambiguous . . . ." (quotation omitted)). That satisfies the first two plain-error prongs.

Willis also satisfies the third prong—*i.e.*, "the error must have affected the defendant's substantial rights." *Molina-Martinez*, 578 U.S. at 194; *see also* Fed. R. Crim. P. 52(b). "To satisfy this third condition, the defendant ordinarily must show a reasonable probability that, but for the error, the outcome of the proceeding would have been different." *United States v. Randall*, 924 F.3d 790, 796 (5th Cir. 2019) (quotation omitted); *accord Puckett*, 556 U.S. at 135; *United States v. Olano*, 507 U.S. 725, 734 (1993).

The district court's ambiguous sentence impacted the "outcome of the proceeding" in at least two ways. *Randall*, 924 F.3d at 796 (quotation omitted). First, the Bureau of Prisons decided that the sentence was so ambiguous that it "could not be executed." *Cf., e.g.*, *Setser*, 607 F.3d at 133 ("[A]lthough his appeal began as a challenge to the ambiguity regarding how the [Bureau of Prisons] might interpret and carry out the district court's sentence, the [Bureau of Prisons] has subsequently interpreted and carried out the sentence."). That obviously would never have happened save for the error. Second, after it was made aware of the error, the district court attempted to impose a completely different sentence at the null-and-void July re-hearing. Rarely do we have such strong evidence "that, but for the error, the outcome of the proceeding would have been different." *Randall*, 924 F.3d

No. 22-10384

at 796 (quotation omitted); *cf. Taylor*, 973 F.3d at 420 ("[I]t is not clear whether the ambiguous nature of Taylor's sentence affected his substantial rights, so we order a limited remand for the district court to clarify, and state on the record, whether it would have imposed the same sentence had it known of the ambiguity.").

Lastly, we find it appropriate to "exercise [our] discretion" to correct the district court's error. *Molina-Martinez*, 578 U.S. at 194. It would "seriously affect[] the fairness, integrity or public reputation of judicial proceedings" to let stand such an ambiguous sentence—one that not even the Bureau of Prisons could effectuate. *Puckett*, 556 U.S. at 135 (quotation omitted).

\*    \*    \*

Accordingly, we VACATE the April 2022 sentence and REMAND for further proceedings consistent with this opinion. *See Garza*, 448 F.3d at 302 ("[A]mbiguous sentences must be vacated and remanded."); *Juarez*, 812 F.3d at 437 ("Where a sentence is ambiguous, . . . the proper course is to vacate [the defendant's] sentence and remand for resentencing.").

This might seem like an empty formalism. After all, the district court already indicated at the July hearing how it intends to re-sentence Willis. But jurisdiction matters. Jurisdiction is the power to say what the law is. "The statutory and (especially) constitutional elements of jurisdiction are an essential ingredient of separation and equilibration of powers, restraining the courts from acting at certain times, and even restraining them from acting permanently regarding certain subjects." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998). And to act without jurisdiction "is, by very definition, for a court to act ultra vires." *Id.* at 102. Moreover, the district court has already expressed its willingness to change Willis's sentence once. We therefore leave it to the district court on remand to exercise its

No. 22-10384

jurisdiction and discretion to impose any sentence at or below the statutory maximum. 18 U.S.C. § 3742(f)(1), (g); *see also Pepper v. United States*, 562 U.S. 476 (2011).